# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CARLA S. GOODMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:05CV00243 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Carla S. Goodman seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits. The Commissioner's denial decision became final on January 13, 2005, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

### The Claimant

Plaintiff was born on July 29, 1969, and was 42 years of age on her alleged onset date of disability. She has a high school equivalent education ("GED") and past relevant work as a doffer and a shade assembler. Plaintiff alleges disability as of March 9, 2002, due to mitral valve prolapse, seizures, depression, carpal tunnel syndrome and tennis elbow.

## The Administrative Proceedings

Plaintiff filed applications for SSI and Disability Insurance Benefits on April 18, 2002, alleging disability as of March 9, 2002, due to a mitral valve prolapse, seizures, depression, carpal tunnel syndrome and tennis elbow. Her claims were denied initially and on reconsideration, and Plaintiff filed a request for a hearing. A hearing was held on September 2, 2004, before ALJ D. Kevin Dugan in Charlotte, North Carolina, and a decision denying benefits was issued on October 13, 2004. Plaintiff filed a request for review, and on January 13, 2005, the Appeals Council issued a decision finding no basis for review of the ALJ's decision. Plaintiff then filed this request for judicial review in a timely manner.

The findings of the ALJ relevant to this review include the following:

1     Plaintiff met the disability insured status requirements of the Social Security Act on March 9, 2002, her alleged onset date of disability, and continued to meet them through October 13, 2004, the date of the ALJ's decision.

2.     Plaintiff has not engaged in substantial gainful activity since March 9, 2002, the alleged onset date of her disability.

3.     Plaintiff suffers from severe fibromyalgia and depression, but does not have an impairment, or combination of impairments, that meets or equals ones listed in Appendix 1, Subpart P, Regulations Number 4.

4. Plaintiff's depression causes mild limitations in her activities of daily living; mild limitations in her social functioning; and moderate limitations in her concentration, persistence or pace. She has not experienced any extended episodes of decompensation.

5. Plaintiff's testimony regarding the severity of her impairments and her resulting functional limitations was "not persuasive."

6. Plaintiff retains the residual functional capacity to perform medium, light, and sedentary work with the following non-exertional limitations: no climbing ladders or concentrated exposure to hazards, and limited to performing simple, routine, repetitive tasks that do not require detailed concentration or public contact.

7. Plaintiff is unable to perform her past relevant work as a shade assembler or as a doffer.

8. Plaintiff is a "younger individual" with a high school education.

9. Based on Plaintiff's age, education, and past relevant work experience, as well as an exertional capacity for medium work, Medical-Vocational Rule 203.29 would direct a conclusion that Plaintiff is "not disabled."

10. Even if Plaintiff's impairments do not permit her to perform a full range of medium work, the above cited rule, in conjunction with the credible testimony

-3-

Case 1:05-cv-00243-WLO-PTS    Document 16    Filed 05/23/06    Page 3 of 11

of the Vocational Expert ("VE"), warrant a finding that there are a substantial number of jobs in the national economy that Plaintiff is capable of performing.

11.     Plaintiff was not under a "disability," as defined by the Social Security Act, at any time through October 13, 2004, the date of the ALJ's decision.

## The Scope of Review

The scope of judicial review by this Court of the Commissioner's decision denying benefits is limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

## Discussion

In making a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. §§ 404.1520 & 416.920 (2005). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful

-4-

activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. The burden of persuasion is on the claimant through the fourth step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering her age, education and work experience. *Id.*

In this case, the ALJ found at step one of the sequential evaluation that Plaintiff had not engaged in substantial gainful activity since March 9, 2002, her alleged onset date of disability. Proceeding to steps two and three, the ALJ found that Plaintiff suffered from severe fibromyalgia and depression, but that she did not have an impairment, or combination of impairments, that met or equaled the ones listed in Appendix 1, Subpart P, Regulations Number 4. At step four, the ALJ found that Plaintiff retained the capacity to perform a full range of medium, light, and sedentary work with the following non-exertional limitations: no climbing ladders or concentrated exposure to hazards and limited to performing simple, routine, repetitive tasks that do not require detailed concentration or public contact. The ALJ found that Plaintiff did not retain the residual functional capacity to return to her past relevant work as a shade assembler or a doffer.

Moving on to step five, the ALJ found that Plaintiff was a "younger individual," with a "high school education" and the residual functional capacity for less than a full range of

medium work. Accordingly, the ALJ found, considering the testimony of the VE, and using Medical-Vocational Rule 203.29 as a framework for decision making, that Plaintiff was "not disabled," as defined by the Social Security Act at any time through October 13, 2004, the date of the ALJ's decision.

In this action for judicial review, Plaintiff first argues that the ALJ committed reversible error in determining Plaintiff's residual functional capacity by not affording greater weight to the purported limitations imposed by Plaintiff's fibromyalgia. (Pleading No. 13 at Pl.'s Br. Supp. Mot. for Summ. J. at 2-8.)

Contrary to Plaintiff's apparent assertion that the Court must accept that Plaintiff is disabled based solely on her subjective complaints of pain, the Regulations provide that:

> [S]ymptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present. Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.

20 C.F.R. §§ 404.1529 & 416.929 (2005). Furthermore, in assessing a claim that a plaintiff suffers from disabling fibromyalgia, "the ALJ should consider whether the record contains a detailed clinical documentation of the claimant's symptoms and whether the physicians who diagnosed the claimant reported on the severity of the condition." *Frezza v. Barnhart,* No. 01-CV-4153JG, 2002 WL 31102625, at *6 (E.D.N.Y. Sept. 18, 2002)(unpublished).

-6-

Case 1:05-cv-00243-WLO-PTS   Document 16   Filed 05/23/06   Page 6 of 11

In this case, Dr. Rajani Relangi and Dr. Henry Y. Chow were Plaintiff's treating physicians at the Center for Arthritis and Rheumatic Diseases. Their medical notes contain virtually no documentation of Plaintiff's purported symptoms which support the medical definition of diagnosis of fibromyalgia. For example, Dr. Relangi does not document that Plaintiff at any point had sufficient "trigger points" to render a conclusive diagnosis of fibromyalgia. *See American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia* (In order to be diagnosed with fibromyalgia, a patient must have "[p]ain in 11 of 18 tender point sites on digital palpation."). Instead, Dr. Relangi's notes state that Plaintiff reported suffering from "generalised pain [sic]," and at various points in time four trigger points, nine trigger points, and five trigger points. (Tr. at 224-225, 226, 227.)

Furthermore, Dr. Relangi's and Dr. Chow's medical notes do not support a conclusion that Plaintiff's symptoms were of sufficient severity to be disabling. On February 4, 2003, Dr. Relangi noted that Plaintiff stated that although she "still hurts a little," she had improved. *Id.* at 226. He also noted that Plaintiff had failed to establish regular sleep habits and begin an exercise program as he had advised during a previous visit. *Id., see id.* at 224-25. On March 31, 2003, Dr. Relangi stated that Plaintiff's fibromyalgia pain was "significantly improved," and that her major complaints concerned memory and concentration problems, and numbness and tingling in her hands and feet, which "could be part of fibromyalgia." *Id.* at 227.

On July 7, 2003, Dr. Chow, who took over Plaintiff's care from Dr. Relangi, stated that Plaintiff's fibromyalgia was "not completely under control," but that she was sleeping okay, and "still functioning and doing fairly well." *Id.* at 230. On September 17, 2003, Dr. Chow stated that Plaintiff reported having "diffuse body pain in the arms and legs" and "mild joint aches." *Id.* at 231. On November 18, 2003, Plaintiff saw Beth O'Brien, RN, who noted that Plaintiff was experiencing a flare-up of her fibromyalgia following a car wreck, and that Plaintiff's fibromyalgia was apparently exacerbated by her stress over her inability to lose weight. *Id.* at 232. On January 19, 2004, Dr. Chow again saw Plaintiff and noted that she had a "moderate amount of pain in her neck and chest," and that her arms and legs hurt "somewhat." *Id.* at 233. Plaintiff reported to Dr. Chow that she was continuing to experience significant anxiety and depression, and that she was working with a psychiatrist. *Id.* The last available treatment record from the Center for Arthritis & Rheumatic Diseases is dated July 20, 2004, when Ms. O'Brien noted that Plaintiff stated that physical therapy "did help" with her fibromyalgia, and that Vioxx was also helping. *Id.* at 273. Ms. O'Brien further noted that Plaintiff fibromyalgia was "still not under control, but . . . anxiety/depression is probably driving this and interfering with her sleep." *Id.*

Given Dr. Chow's conclusion that Plaintiff's impairment of depression magnified her fibromyalgia symptoms, the Court finds that the ALJ appropriately accommodated Plaintiff's severe impairments of fibromyalgia and depression by limiting Plaintiff to simple, routine, repetitive tasks that do not require detailed concentration or public contact. The medical

records of Dr. Relangi and Dr. Chow do not support, and Plaintiff does not suggest, any *specific* additional exertional limitations which the ALJ should have included in Plaintiff's residual functional capacity.

Accordingly, the Court finds that although Plaintiff suffered some ongoing symptoms from fibromyalgia, the ALJ's determination that Plaintiff retained the residual functional capacity to perform a significant range of medium, light and sedentary work with the non-exertional limitations discussed above was not in error.

Plaintiff's second and final argument before the Court is that the ALJ erred in relying on a residual functional capacity ("RFC") assessment of Plaintiff dated May 20, 2002, and a mental residual functional capacity assessment ("MRFC"), dated June 19, 2002, both performed by non-examining state agency physicians. (Pleading No. 13 at 11-13, *citing* Tr. at 91-98, 99-102.) Plaintiff argues that both forms were completed before she began suffering from fibromyalgia in January of 2003, and thus should not have been afforded significant weight by the ALJ. *Id.* This argument is without merit.

The opinion of a non-examining state agency physician is to be considered by the ALJ to be that of "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i) & 416.927(f)(2)(i) (2005). Furthermore, "RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the [ALJ's] decision as medical opinions from nonexamining sources about what the individual can still

-9-

do despite his or her impairment(s)." Social Security Ruling 96-6p, Policy Interpretation Ruling Titles II and XVI: *Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence* ("SSR 96-6p").

In this case, the ALJ clearly stated that he gave "the most weight to the treatment records" in developing Plaintiff's RFC. (Tr. at 16.)[1] However, the ALJ also stated that, "[i]n the absence of a functional capacities evaluation completed by a treating physician, I have given substantial weight to the findings of the State agency medical consultants." *Id.* at 17. Such reasoning is not inconsistent with the regulations.

Furthermore, while Plaintiff might prefer that the RFC and MRFC have been performed at a later date, when she perceived her impairments to be more severe, both were performed

---

[1] The regulations provide, in pertinent part, as follows:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . If we find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . we will give it controlling weight.

20 C.F.R. §§ 409.1527(d)(2) & 416.927(d)(2) (2005). By negative implication, if a treating source's opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques *or* if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (emphasis added).

Case 1:05-cv-00243-WLO-PTS   Document 16   Filed 05/23/06   Page 10 of 11

after Plaintiff's alleged onset date of disablity, at a point in time when she was representing to the Commissioner that she was disabled. If Plaintiff believes that the record did not accurately reflect her impairments or limitations at step four of the sequential evaluation, the burden is on Plaintiff, and not the Commissioner, to correct such misperceptions. *Hunter*, 993 F.2d 35.

Accordingly, the Court finds that the ALJ's evaluation of the RFC and MRFC completed by the non-examining state agency physicians was without error.

## Conclusion

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for summary judgment [Pleading No. 13] be denied, that the Commissioner's motion for judgment on the pleadings [Pleading No. 14] be granted, and that the decision of the Commissioner be affirmed.

                                                  /s/ P. Trevor Sharp
                                               United States Magistrate Judge

Date: May 23, 2006